In re A.H. ROBINS COMPANY,
INCORPORATED, Debtor.

Employer's Tax Identification
No. 54–0486348.

DALKON SHIELD CLAIMANTS
TRUST, Movant,

v.

Ellen Paulette M. FIELDS, Respondent.

No. 85–01307–R.

United States District Court,
E.D. Virginia,
Richmond Division.

April 7, 1998.

Ellen Paulette M. Fields, Rome, GA, Pro se.

Rene' Stemple Ellis, Executive Director, The Private Adjudication Center, Inc., Durham, NC, N. Karen Deming, Troutman Sanders, Jeffrey O. Bramlett, Bondurant, Mixson & Elmore, Atlanta, GA, for Respondents.

George Foster, Foster, Foster, Allen & Durrence, Chattanooga, TN, for Dr. Leroy Sherrill and Dr. William D. Crawley.

Wade C. Hoyt, III, The Hoyt Firm, Floyd H. Farless, Farless & Newton, Rome, GA, for Floyd County Health Department and M. Howell.

David Gottlieb, Watson & Dana, Lafayette, GA, for Walker County Board of Health (mistakenly named Rossville Health Department).

Orran Lee Brown, Richmond, VA, for Dalkon Shield Claimants Trust.

*MEMORANDUM*

MERHIGE, District Judge.

This contested matter is before the Court upon several Motions and pleadings filed by unrepresented Dalkon Shield claimant Ellen Paulette Mitchell Fields ("Ms. Fields"). These proceedings have involved the energies of several parties and courts. This Memorandum will therefore dispose of all outstanding matters relating to Ms. Fields.

## I.

### A. *Ms. Fields Concluded Her Dalkon Shield Claim Through Arbitration*

Ms. Fields chose arbitration under § E.5(a) of the Claims Resolution Facility ("CRF") to resolve her Dalkon Shield Claim. The arbitrator chosen by Ms. Fields and the Dalkon Shield Claimants Trust (the "Trust"), Jeffrey O. Bramlett, presided over the full evidentiary hearing on Ms. Fields' claim in Atlanta, Georgia, on December 12–13, 1994. Ms. Fields was represented by counsel at that hearing. In his written decision issued on January 17, 1995, Arbitrator Bramlett denied Ms. Fields' claim because Ms. Fields had never used a Dalkon Shield IUD. Instead, she had used a Lippes Loop, an IUD made not by A.H. Robins but by another company and for which the Trust has no liability.

### B. *The Various Matters Before the Court*

Although Ms. Fields had the Arbitration Rules and must have known of the limited judicial review available under Rule XIV.B after an arbitrator has decided a Dalkon Shield Claim and that such review could be sought only in this Court and not elsewhere, after the arbitrator denied her claim, she launched an attack in Atlanta on nearly every person who had ever come in contact with her claim. On March 21, 1995, Ms. Fields, by that time *pro se,* filed a complaint against the Trust and eleven other defendants in the United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action No. 95–CV–8222–WBH, suing for treason and other claims and seeking $30 million in damages and punitive damages.

The Trust learned of Ms. Fields' Georgia suit when the Atlanta court, according to its Local Rules, began allowing her to serve her Complaint in September 1995. On September 13, 1995, the Trust filed a Motion To Enforce Plan (Docket No. 28216) with this Court, asking it to order Ms. Fields to dismiss her Atlanta suit. On October 10, 1995, the Trust filed a Motion with the Atlanta court asking it to dismiss Ms. Fields' suit for lack of subject matter jurisdiction.

After many filings in Atlanta by Ms. Fields and others, by Order of March 21, 1996, the Atlanta court transferred Ms. Fields' Atlanta suit to this Court. An Order of April 25, 1996 (Docket No. 29186) lodged the suit with the Bankruptcy Clerk as a matter related to the Robins bankruptcy case. The April 25 Order stayed all other filings in this Court by any of the parties involved in the case, except Ms. Fields or the Trust.

### 1. *The Atlanta Suit*

The Atlanta case brought with it the following complaints or motions:

(1) *Fields' Complaint:* filed by Ms. Fields on March 21, 1995, against the Trust; the Private Adjudication Center at Duke University, which serves as the Neutral Third Party for Dalkon Shield arbitration; Karen Deming, outside counsel to the Trust in Atlanta, Georgia, who defended the Trust in Ms. Fields' arbitration case, and her law firm, Troutman Sanders L.L.P.; the arbitrator, Jeffrey Bramlett, and his firm, Bonderant, Mixson and Elmore; the Rossville Health Department; Dr. Leroy Sherrill; Dr. W.D. Crawley; the Floyd County Health Department; "M. Howell" at the Floyd County Health Department; and Ms. Fields' own former attorneys, Farless & Newton. In this Complaint, Ms. Fields alleged: treason, mail fraud, withholding of evidence, manufacturing of evidence, misleading and misrepresentation of facts, "issues and intentions or interest," malpractice corruption, misapplication of plaintiff's mental health records, racial and economical discrimination, mis-

carriage of justice, and obstruction of justice.

(2) *Rule 12(b)(6) Motion to Dismiss:* filed September 6; 1995, by N. Karen Deming and her firm, Troutman Sanders LLP, for failure to state a claim.

(3) *Rule 12(b)(6) Motion to Dismiss:* filed September 26, 1995, by Jeffrey O. Bramlett and Bondurant, Mixson & Elmore, C.J., for failure to state a claim. On September 27, 1995, Ms. Fields filed a "Motion" asking the Atlanta Court to "uphold" the suit there. Though called a Motion, this pleading was only a response to the Deming/Troutman and Bramlett/Bondurant Motions to Dismiss, as Ms. Fields was asking that those Motions be denied. It added no requests on which any ruling is required.

(4) *Motion to Dismiss:* filed October 10, 1995, by the Trust, seeking dismissal of Ms. Fields' Atlanta suit for lack of subject matter jurisdiction.

(5) *Motions for Investigation and Transfer:* filed on December 8, 1995, in which Ms. Fields moved the Atlanta court to:

(a) Order a transfer of Plaintiff Dalkon Shield Case DS13843 to the District Court of Atlanta.

(b) Request an investigation into the "PLAN."

(c) Request an investigation of the Trust's handling of Plaintiff Case and other Dalkon Shield cases.

(d) Request an investigation of Duke University's financial contributions.

On January 2, 1996, Ms. Fields supplemented this Motion with a pleading asking for an investigation of: attorneys for the Trust and if they represented Robins, Hugh Davis, Irwin Lerner, AHP, or Aetna; the agreement between Robins and AHP; the entire "PLAN of the sixth amended and restated Disclosure Statement"; Aetna Life & Casualty and its subsidiaries and affiliates; all arbitrators to see if they represented Robins, Davis, Lerner, AHP and affiliates, or Aetna Life and affiliates; the Trust's attorneys' and arbitrators' "relationship (race) with minority claimants and minority cases that they have been a part of during their practice as an attorney."

(6) *Motion to Vacate Arbitration Decision:* in a "Response" filed by Ms. Fields on December 26, 1995, Ms. Fields asked the Atlanta court for "relief from dismissal of her lawsuit under the federal arbitration Act, 9 U.S.C. §§ 1 that this judicial review be by a district court in the jurisdiction where the award (this case being decision) by an arbitrator is made, sections 9, 10, and 11."

## 2. *The Richmond Case*

The Richmond action begun by the Trust against Ms. Fields contains the following pending Motions:

(1) *Motion to Enforce Plan:* filed on September 13, 1995 (Docket No. 28216) by the Trust, seeking an Order directing Ms. Fields to comply with the Plan by dismissing her Atlanta suit.

(2) *Motion to Vacate Arbitration Decision, Etc.:* in a "Response" filed by Ms. Fields on September 20, 1995 (Docket No. 28311–A), she asked:

(a) "That the lawsuit in the state of Georgia be upheld in the United States [D]istrict Court of Georgia with JURISDICTION OVER THE MATTER being shared by both courts."

(b) "Because of respondents [sic] psychological and financial conditions, Respondent request[s] that the United States District Court of Georgia in Atlanta continue to hear all proceedings with respect being given to the rights of the United States Bankruptcy Court for the Eastern District of Virginia, and all other parties concerned."

(c) "That the arbitrator's decision not be binding and the lawsuit be upheld based upon section B. numbers 1 and 2 and 5 (9 U.S.C. § 10). I request that Judge Willie B. Hunt's Order August 9, 1995 of the United States District court of Georgia be upheld with the respect and co-sharing of Jurisdiction."

(d) "Because of my being deprived of adequate and full representation of counsel by a [licensed] attorney or attorneys, I am requesting that the United States District Court of Virginia, Honorable Robert M. Wily with the assistant of Judge Willie B. Hunt of Georgia appoint an attorney to represent me with my case.... This request was made and is being made because of my financial and psychological situation. And at this time also because of my inability to interpret legal matters and knowledge of laws and legal matter relating to the case."

(3) *Motion for Investigation:* filed by Ms. Fields on September 22, 1995 (Docket No. 28359):

"Plaintiff–Respondent moves for a complete investigation by the District Court of Virginia into the charges against the Trust over improper and corruptible handling of my claim. Plaintiff moves for an investigation (Federal) also of other cases filed against the trust, on the same grounds given in plaintiff's lawsuit."

She repeated this request for a "federal investigation of the Dalkon Shield Claimants Trust's handling of Plaintiff case and other claimant's cases is again requested" in a Motion she filed here on October 16, 1995 (Docket No. 28452).

(4) *Motion for Transfer:* in a "Motion for Transfer" filed by Ms. Fields on December 7, 1995 (Docket No. 28891), she asked this Court to transfer her claim to the federal court in Atlanta, alleging bias, prejudice, or incompetence of the judge of this Court. Fields also incorporated in this pleading three of the pleadings she had filed in Atlanta.

### 3. *The Motions Requiring A Ruling*

The Court has identified these matters to be ruled upon:

(1) *Motions to Dismiss for Failure to State a Claim:* the Motion To Dismiss

for failure to state a claim under Fed. R.Civ.P. 12(b)(6) and Bankruptcy Rule 7012 presented by the Trust in its current Motion and the Motions To Dismiss filed by defendants Karen Deming, Troutman, Sanders, LLP, Jeffery Bramlett, and Bondurant, Mixson & Elmore, L.L.P., in the Atlanta case, now pending here after that suit was transferred to this Court.[1]

(2) *Fields' Motions for Investigations:* in several pleadings filed both in Atlanta and here, or filed in Atlanta and incorporated in pleadings here, Ms. Fields has asked this Court to conduct an investigation into the Plan, the Trust's handling of her case and other Dalkon Shield cases, and various other matters.

(3) *Fields' Motion to Transfer:* on December 7, 1995 (Docket No. 28891), Ms. Fields' asked this Court to transfer her Dalkon Shield Claim to the United States District Court for the Northern District of Georgia.

(4) *Fields' Motion for Appointment of An Attorney:* in her September 20, 1995 pleading filed here (Docket No. 28311–A), Ms. Fields asked that this Court, with the assistance of the federal court in Georgia, appoint an attorney to represent her in her case.

(5) *Fields' Motion to Vacate Arbitration Decision:* in a pleading filed in Atlanta on December 26, 1995, and a pleading filed here on September 20, 1995 (Docket No. 28311–A), Ms. Fields asked that the arbitrator's decision denying her Dalkon Shield Claim be vacated under subsections 1, 2, and 5 of 9 U.S.C. § 10.

The Court will dispose of all these Motions.

### II.

A. *Ms. Fields' Damages Suit Is Dismissed For Failure To State A Claim*

In her Complaint, Ms. Fields seeks $30 million from the Trust and eleven other de-

---

1. The Motion filed by the Trust in Atlanta to dismiss that suit for lack of subject matter jurisdiction is now moot. Because this Court has exclusive jurisdiction over Plan interpretation and implementation, there was no subject matter jurisdiction in Atlanta or elsewhere to entertain Ms. Fields' suit. Now that the case has been transferred here, the point is moot.

fendants as well as punitive damages. She alleges, among other things, conspiracy, treason, mail fraud, misrepresentation, corruption, discrimination, malpractice, miscarriage of justice, and obstruction of justice. Ms. Fields has no such causes of action.

■ Section 8.03 of the Plan and paragraph 33 of the July 26, 1988 Order (the "Confirmation Order") confirming the Plan released all Persons from all Dalkon Shield-related liability. *See In re A.H. Robins Co.,* 88 B.R. 742 (E.D.Va.1988), Docket No. 5714, *aff'd,* 880 F.2d 694 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). Section 8.04 of the Plan and paragraph 34 of the Confirmation Order permanently enjoined the commencement of any proceeding of any kind against the Trust on a Dalkon Shield Claim and "from any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan," the Claims Resolution Facility and the Trust Agreements. The sole remedy of claimants asserting injury caused by the Dalkon Shield lies against the Trust, and no other person. Claimants can proceed against the Trust only in conformance with the Plan and CRF.

Section 8.04 of the Plan and paragraph 33 of the Confirmation Order released the defendants in Ms. Fields' Complaint, other than the Trust, from all Dalkon Shield-related liability. Section 8.04 of the Plan and paragraph 34 of the Confirmation Order permanently enjoined any suit against any of those "Persons" on Dalkon Shield Claims, which are defined in § 1.37 of the Plan. Section 1.37 describes a Dalkon Shield Claim broadly to include all rights or claims "based upon or in any manner arising from or related to" the Dalkon Shield, the insertion, use or removal of a Dalkon Shield, the failure to warn, disclose information concerning, or to take remedial action respective to the Dalkon Shield, and the "processing, adjustment, defense, settlement, payment, negotiation or handling of any claims, demands, suits, proceedings or causes of action based upon or relating in any way to the Dalkon Shield." These provisions formed the keystone of the design in the Plan and CRF to achieve "global peace" by requiring all claimants to sue

only the Trust for any claim relating to the Dalkon Shield and by eliminating collateral litigation against all others. *See In re A.H. Robins Co., Inc. (Nelson v. Dalkon Shield Claimants Trust),* 216 B.R. 175 (E.D.Va. 1997).

All the allegations and purported causes of action in Ms. Fields' Complaint arise from her Dalkon Shield Claim. They concern the processing of that claim at the Trust and at her arbitration hearing. The allegations are within the definition of a Dalkon Shield Claim in § 1.37 of the Plan, which covers the processing, defense, and handling of claims for damages for an alleged use of a Dalkon Shield.

■ Ms. Fields pursued the remedy available to her under the Plan and the CRF to recover damages from the Trust relating to her use of the Dalkon Shield. She could not prove she ever used the Dalkon Shield. The avenue for recovery afforded Ms. Fields in the Plan and CRF were her sole remedy for damages supposedly caused by the Dalkon Shield. She agreed when she entered arbitration that the arbitration proceeding would be her exclusive remedy. She cannot afterwards seek other avenues for relief by conjuring up new theories against the Trust and other persons or entities involved in her medical history or. in the Trust's processing of her claim. There are no such claims. If there were, the elaborate, detailed provisions in the Plan and CRF would be reduced to merely a preliminary round in endless waves of suits and proceedings against countless persons. The Plan and CRF would have done little to achieve global peace. Ms. Fields has no cause of action for damages against the Trust or any of these other defendants for any of the aspects of handling of her claim referred to in her lengthy Complaint.

This Court previously refused to allow a disgruntled claimant to bring suit against the Trust for damages over the handling of her claim. *See In re A.H. Robins Co. Inc., (Kidd v. Dalkon Shield Claimants Trust),* 197 B.R. 597 (E.D.Va.1994). The Court also has made clear that an Alternative Dispute Resolution claimant unhappy with the referee's decision on her claim gets no "second bite at the

apple" to ask this court to second-guess the referee's factual conclusions. *See In re A.H. Robins Company, Inc., (Harmon v. Dalkon Shield Claimants Trust)*, 220 B.R. 577, (E.D.Va.1998); *In re A.H. Robins Company, Inc. (Clawson v. Dalkon Shield Claimants Trust)*, 220 B.R. 579 (E.D.Va.1998); *In re A.H. Robins Co., (West & West v. Dalkon Shield Claimants Trust)*, 210 B.R. 699 (E.D.Va.1997). Nor does a disappointed arbitration claimant get a *de novo* second chance to prove her case either to a new arbitrator or to this Court on a Motion To Vacate an arbitrator's award, but instead must satisfy one of the grounds for judicial review in Arbitration Rule XIV or Amended Arbitration Rule 44 to obtain any judicial relief. *See In re A.H. Robins Company, Inc. (Widmark v. Dalkon Shield Claimants Trust)*, 219 B.R. 105 (E.D.Va. 1998); *In re A.H. Robins Company, Inc. (Short v. Dalkon Shield Claimants Trust)*, 219 B.R. 111 (E.D.Va.1998).

An unhappy claimant cannot bypass the Plan, the CRF, and the Rules she agreed to follow by filing a lawsuit seeking damages because her claim was denied. There is no such cause of action. This Court has supervised the Trust's operations since it first began in 1988. If Ms. Fields had felt, during the processing of her claim, the Trust was not following the Plan or CRF, or was otherwise mishandling her claim or not honoring its fiduciary duties, her remedy would have been to come to this Court at the time and seek its intervention, as other claimants have done. Her remedy was not to await the outcome of her claim and then, dissatisfied with her result, sue every imaginable defendant for damages. The Plan and CRF limited claimants to a claim against the Trust. They did not create new causes of action for damages for how the claim was handled. There is no such cause of action against the Trust, its Trustees, its lawyers, its employees, or any other person. All these claims in Ms. Fields' Complaint must be dismissed with prejudice, as they do not exist under the law.

Two aspects of Ms. Fields' Complaint warrant specific mention. First, at pages 10–11, Ms. Fields accuses her former lawyers, Floyd Farless and William Newton, of "corruption." Section 8.03 of the Plan did not release lawyers for Dalkon Shield Claimants from malpractice liability for negligence committed in the pursuit of their clients' Dalkon Shield Claims. Legal malpractice claims by Dalkon Shield Claimants against their own lawyers are not enjoined by § 8.04 of the Plan.

Ms. Fields does not, however, allege that these lawyers negligently pursued her claim. She asserts they withdrew from representing her because of "corruption." This does not state a claim for legal malpractice under the law of any jurisdiction. Also, with no connection to the Robins bankruptcy case, there is no federal subject matter jurisdiction under 28 U.S.C. § 1334(b), which covers the federal district courts' jurisdiction over matters "related to" a bankruptcy case, for Ms. Fields to sue her lawyers here. As far as the Court can tell, Ms. Fields and her former lawyers are citizens of Georgia, precluding diversity jurisdiction under 28 U.S.C. § 1332. The claim against the lawyers for "corruption" shall be dismissed with prejudice. To the extent, if any, Ms. Fields is trying to sue those lawyers for legal malpractice (and the Court certainly does not intend to suggest that any such claim has any reasonable basis in fact or law), it shall be dismissed without prejudice.

Second, Ms. Fields is also attempting to sue Dr. Leroy Sherrill and Dr. W.D. Crawley, the doctors who had treated her and fitted her with a Lippes Loop IUD. She alleges treason and discrimination and claims the doctors did not tell her that she was being inserted with an experimental Dalkon Shield or inform her of the dangers of its use.

Ms. Fields cannot sue any of her doctors for malpractice relating to a Dalkon Shield. Under § 1.85 and § 8.04 of the Plan, persons may still sue doctors on claims initially arising in some manner from use of a Dalkon Shield, but only if they are based exclusively on medical malpractice independent of the

Dalkon Shield. This allows a claimant to sue for injuries only if the sole cause of those injuries was the conduct of the doctors, and not the Dalkon Shield. *See In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser)*, 972 F.2d 77 (4th Cir.1992).

Ms. Fields has never alleged in any of her filings that her doctors alone caused her harm. She sought damages from the Trust on the theory that the Dalkon Shield had caused all her injuries. She has no Unreleased Claim under the Plan and the *Reiser* definition.

Two other Motions To Dismiss are pending. Karen Deming and her law firm, Troutman Sanders, filed a Motion To Dismiss contending that Ms. Fields' proceedings are barred by the Plan. Defendants Jeffrey Bramlett (the arbitrator) and his firm, Bondurant, Mixson & Elmore, have also moved to dismiss, raising this argument. Those two Motions shall be granted along with the Trust's Motion. Arbitrator Bramlett's Motion also raises the defense of judicial immunity and the lack of particularity in Ms. Fields' allegations. Both points are well taken and are further grounds to dismiss the Complaint. Under Arbitration Rule XIV.J, the arbitrator and his law firm are immune from suit by Ms. Fields.

### B. *The Request For An Investigation Shall Be Denied*

■ Ms. Fields has asked this Court to investigate:

(1) "the Plan";

(2) the Trust's handling of her case and other Dalkon Shield Claims;

(3) Duke University's financial contributions;

(4) the Trust's attorneys, and whether they represented Robins or other defendants;

(5) the agreement between Robins and American Home Products;

(6) all arbitrators; and

(7) the relationships between the Trust's attorneys and all the arbitrators with minority claimants and other minorities they have come across in their legal practices.

In §§ 8.05(c) and (d) of the Plan, the Court retained jurisdiction to resolve disputes regarding implementation of the Plan and the CRF. This Court has that supervisory jurisdiction over the Trust. Section 8.05 provides that this jurisdiction does not give the Court "authority to monitor … the day-to-day operations of the [Trust]." This Court has on many occasions held that it will not interfere with the day-to-day operations of the Trust regarding the processing of claims. *See In re A.H. Robins Co. (Besag v. Dalkon Shield Claimants Trust)*, 197 B.R. 590 (E.D.Va. 1994). Under *Besag,* the Court will review a matter only if the claimant contends that a Trust practice or procedure violates a term of the Plan or CRF, or if the Court finds that the Trust's practice or procedure does not serve the goal of fully, fairly, and expeditiously resolving all Dalkon Shield Claims.

Ms. Fields apparently feels that the Trust did not follow the Plan in evaluating her claim. She does not provide any specifics. She alleges no facts or circumstances that could elevate her general complaint about not recovering on her claim beyond the realm of day-to-day claims processing by the Trust.

Ms. Fields also complains about the evidence admitted at her arbitration hearing and accuses the arbitrator of bias because he concluded that Ms. Fields used the Lippes Loop and not the Dalkon Shield. She suggests some connection between the Trust and financial contributions to the Private Adjudication Center at Duke University, which serves as the neutral third party under the Arbitration Rules, or some financial link between the arbitrator and the Trust and its lawyers or Robins. She claims that the Trust, Duke University, the arbitrator, all the Trust's lawyers, and all the other arbitrators are racially discriminatory in all their actions relating to her claim and all other Dalkon Shield Claims.

■ Ms. Fields chose arbitration to adjudicate her claim. She contractually agreed to be bound by the Rules governing regular arbitration. Arbitration Rule III lists the disclosures required of arbitrators and parties regarding direct financial or personal interest in the outcome of the arbitration.

Arbitration Rule XIV.J grants arbitrators judicial immunity for their actions relating to a claim. Arbitration Rule XIV.B sets out the grounds for judicial review of an arbitration decision, one of which is arbitrator bias. These are the established procedures for dealing with complaints of the kind Ms. Fields now makes. She offers no support for any of these bald accusations. The arbitrator's denial of Ms. Fields' claim does not mean he or any others were racially biased. There is no available procedure or need for a "federal investigation" of bias or discrimination against her at her arbitration hearing. Ms. Fields' remedy is that provided for judicial review of an arbitrator's decision. Her requests for "investigations" will be denied.

### C. *These Proceedings Will Not Be Transferred*

Ms. Fields asks that her Dalkon Shield Claim be transferred to the United States District Court for the Northern District of Georgia in Atlanta. This Court denied that same request in an Order and Opinion entered on October 31, 1995 (Docket Nos. 28629 & 28630), ruling that it has "no right to relinquish its exclusive jurisdiction over a case such as this which raises matters within this Court's exclusive jurisdiction that cannot be pursued elsewhere." That decision will stand.

### D. *Ms. Fields' Request For Appointment Of A Lawyer Shall Be Denied*

In her September 20, 1995 Motion (Docket No. 28311–A), Ms. Fields asked the Court to appoint an attorney to represent her in this matter. She alleges in her pleading that she has tried to obtain an attorney without success and is unable to "interpret legal matters and knowledge of laws and legal matter relating to the case."

██ There is no statutory entitlement to appointed counsel in this case. The Criminal Justice Act, 18 U.S.C. § 3006A, requires the appointment of counsel to represent persons financially unable to obtain adequate representation in certain criminal proceedings, none of which are relevant here. Under 28 U.S.C. § 1915(e)(1), the Court may request an attorney to represent any person unable to afford counsel in *in forma pauperis* proceedings. This does not require a court to appoint counsel to civil litigants. *See Moss v. ITT Continental Baking Co.*, 83 F.R.D. 624 (E.D.Va.1979). Ms. Fields has neither sought nor obtained leave to proceed *in forma pauperis* under § 1915. She has furnished no evidence on her financial condition or whether she has been diligently attempting to find counsel of her own. There is no facial merit to any of her claims. This request for appointment of counsel will be denied.

### E. *Ms. Fields' Motion To Vacate Her Arbitration Award Shall Be Denied*

██ To vacate an arbitrator's decision on a Dalkon Shield Claim heard under the original Arbitration Rules, the Court must find one or more of the grounds set out in Arbitration Rule XIV.B:

1. The award was procured by corruption, fraud or undue means.

2. The arbitrator was biased or corrupt.

3. The arbitrator was guilty of abuse of discretion in refusing to postpone the hearing, refusing to admit competent and relevant evidence, or engaging in misconduct that prejudiced the moving party.

4. The arbitrator exceeded his or her powers, or so exercised them such that he or she failed to make a final, definite, and unambiguous award.

This Court has stressed that a Dalkon Shield arbitrator's decision will receive substantial deference on review. *See, e.g., In re A.H. Robins Company, Inc., (Widmark v. Dalkon Shield Claimants Trust)*, 219 B.R. 105 (E.D.Va.1998); *In re A.H. Robins Company, Inc. (Campbell v. Dalkon Shield Claimants Trust)*, 219 B.R. 108 (E.D.Va.1998); *In re A.H. Robins Company, Inc. (Short v. Dalkon Shield Claimants Trust)*, 219 B.R. 111 (E.D.Va.1998). An overly expansive review of arbitration decisions would undermine the efficiencies arbitration seeks to achieve. *Germany*, 197 B.R. at 528, n. 2. Recently, in

*Short,* the Court repeated its earlier observations in *In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Gaither),* 210 B.R. 527 (E.D.Va.1997) and *Germany:*

> An arbitrator's decision receives substantial deference on review, and may only be vacated for the grounds stated in the Arbitration Rules, § 10 of the Federal Arbitration Act, or where the arbitrator acted in manifest disregard of the law. This Court will not overturn an arbitration decision merely because the Court would have reached a different conclusion if presented with the same facts. Instead, the Court's role is limited to determining whether the arbitration process was itself flawed.

*Short,* 219 B.R. at 114.

In the pleading she filed September 20, 1995 (Docket No. 28311–A), Ms. Fields asked that the arbitrator's decision "not be binding . . . based upon section B. numbers 1, 2 and 5 (9 U.S.C. § 10)." She must be referring to § 10(a)(1), (2) and (5) of the Arbitration Act, which correspond to numbers 1, 2 and 5 in § B of Arbitration Rule XIV. Section (5) does not provide an independent ground to vacate an award.

■ To reverse the arbitrator's decision upon her charge of bias, Ms. Fields must show that it was procured by corruption, fraud, or undue means, or the arbitrator was biased or corrupt. In *Germany,* this Court defined bias as a condition of the mind that sways judgment and renders a judge unable to exercise his function impartially in a particular case. 197 B.R. at 528. The movant bears the "significant burden of establishing 'specific facts that indicate improper motives on the part of an arbitrator.'" *Id.* The alleged partiality must be "direct, definite and capable of demonstration rather than, remote, uncertain or speculative." *Id.*

Ms. Fields accuses Arbitrator Bramlett of fraud or bias because he concluded from the evidence that Ms. Fields had used the Lippes Loop and not a Dalkon Shield. She complains about the Trust introducing some, but not all, of her medical records. She urges that her device was a Dalkon Shield and not a Lippes Loop, contrary to the arbitrator's finding. She describes marking exhibits out of a box of papers she had brought with her to the hearing.

None of these accusations amount to specific facts that indicate improper motives on the part of Arbitrator Bramlett or fraud or corruption at Ms. Fields' hearing. They are mere statements of belief or suspicion. Ms. Fields disagrees with the arbitrator's decision that she used the Lippes Loop and not a Dalkon Shield. She deduces fraud or bias from the mere fact that the arbitrator ruled against her.

■ Ms. Fields has not met her burden of showing fraud, corruption, or bias by the arbitrator. The Court will not allow any claimant who disagrees with an arbitrator's decision to obtain a new hearing solely because the arbitrator reached a conclusion different from the one the claimant wanted.

■ At pages 11–12 of Ms. Fields' Complaint, she says that Arbitrator Bramlett's wife had done contract work for Troutman Sanders, the law firm that represented the Trust at her arbitration case. The Trust disclosed this past connection before the arbitration hearing. Ms. Fields, represented by counsel, agreed to the selection of Arbitrator Bramlett and went forward to the hearing without objection on this ground. According to Arbitration Rule XV.B, her objection was waived. She cannot now in hindsight attack the decision on this ground. Even if she could, this remote, former connection between an arbitrator and the Trust's law firm would not amount to bias necessary to overturn his decision. Ms. Fields' Motion To Vacate her arbitration decision will be denied.

### III.

The Court is dismayed at the consumption of time and expenses imposed on the judicial system, these parties, and their lawyers by a claimant who never used a Dalkon Shield. Ms. Fields exhausted her CRF remedies. She and her lawyers presented her case to an impartial arbitrator, who decided against her. Her sole remedy thereafter is a Motion To Vacate under Arbitration Rule XIV.B. She cannot show a ground under that Rule to

vacate the arbitrator's decision. She has no other claims now to bring.