In re A.H. ROBINS COMPANY, INCORPORATED, Debtor.

Employer's Tax Identification No. 54–0486348.

Joyce A. MAKSIMUK, Movant,

v.

DALKON SHIELD CLAIMANTS TRUST, Respondent.

No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

July 31, 1998.

Gregory T. Zalecki, Sterling Heights, MI, for Joyce A. Maksimuk.

Orran Lee Brown, Richmond, VI, for Dalkon Shield Claimants Trust.

### MEMORANDUM

SPENCER, District Judge;
BLACKWELL N. SHELLY, Bankruptcy Judge.

This matter is before the Court on the Second Motion to Vacate Arbitration Decision filed by Dalkon Shield Claimant Joyce A. Maksimuk (Docket No. 30323). For the reasons which follow, the Court will DENY the motion.

### I.

Joyce A. Maksimuk ("Ms.Maksimuk") chose to pursue her claim under Option 3 of the Claims Resolution Facility ("CRF"). After rejecting the Dalkon Shield Claimants Trust's ("the Trust") offers of compensation to her, she elected to resolve her claim in arbitration under CRF § E.5(a). To enter arbitration, Ms. Maksimuk and her attorney, Mr. Gregory Zalecki ("Mr.Zalecki"), signed an Arbitration Election and Agreement in which Ms. Maksimuk agreed to follow the First Amended Arbitration Rules in her case. She also agreed that the arbitrator's decision would be the sole remedy available to her on her Dalkon Shield claim.

The evidentiary hearing on Ms. Maksimuk's claim was held before Arbitrator Michael V. Kell ("Arbitrator Kell") on November 4–5, 1997. Ms. Maksimuk was present with her attorney, Mr. Zalecki. The Trust appeared by counsel. On December 8, 1997, Arbitrator Kell issued his written decision. Finding that Ms. Maksimuk knew more than three years before she filed her claim that she had an injury she associated with the Dalkon Shield IUD, Arbitrator Kell held that

her claim was barred by the two-year statute of limitations in First Amended Arbitration Rule 40.

Ms. Maksimuk then filed a Motion To Vacate with this Court (Docket No. 30170), contending that Arbitrator Kell had incorrectly decided the statute of limitations issue. For various reasons set out in its Response to that motion, the Trust agreed with Ms. Maksimuk and her counsel to remand her claim to Arbitrator Kell for a ruling on the merits of her claim, rather than standing on the statute of limitations ground for the decision. By letter of January 14, 1998, both parties asked Arbitrator Kell to decide the claim on the merits.

Arbitrator Kell issued a second decision on April 28, 1998. Concluding that Ms. Maksimuk had failed to prove by a preponderance of the evidence that she had experienced the injuries she claimed (specifically, pelvic inflammatory disease ("PID") and excessive bleeding and pain), he entered judgment in favor of the Trust.

Ms. Maksimuk filed her Second Motion To Vacate Arbitration Decision on June 3, 1998. She asks this Court to set aside Arbitrator Kell's April 28 decision, grant her a new arbitration hearing with a different arbitrator, allow 120 days to conduct discovery from the Private Adjudication Center ("PAC")[1] on its arbitrator selection process, grant additional time to have a new arbitration hearing, and order other relief. She offers three grounds for her motion:

(1) Citing First Amended Arbitration Rule 44(a)(2), which allows the Court to vacate an arbitrator's decision where the plaintiff proves that the arbitrator was biased or corrupt, she contends that Arbitrator Kell was biased because he represented defendants in products liability litigation, as did others on the strike list of five potential arbitrators compiled by the PAC for her case.

(2) She argues that Arbitrator Kell abused his discretion under First Amended Arbitration Rule 44(a)(3) in excluding Mr. Zalecki's notes of a 1983 telephone conversation with a Dr. Donald Sweeney, who had performed surgery on Ms. Maksimuk.

(3) Without specifying on which prong in First Amended Arbitration Rule 44(a) the argument rests, she contends that Arbitrator Kell wrongly concluded from the evidence that she had not suffered excessive pleading or pain caused by the Dalkon Shield IUD.

The Trust filed its Response to Ms. Maksimuk's Second Motion To Vacate on June 15, 1998 (Docket No. 30336). On July 9, 1998, the Trust filed a Notice of Submission on the Pleadings (Docket No. 30363), indicating that the time for Ms. Maksimuk to file any rebuttal brief under Local Bankruptcy Rule 9013–1(H)(3)(a) had expired on June 22, 1998, and that Ms. Maksimuk had in fact not filed any rebuttal. The Trust also reported that neither it nor Ms. Maksimuk desired a hearing on the Second Motion To Vacate. Accordingly, the Court now rules upon the motion on the pleadings without oral hearing, pursuant to Local Bankruptcy Rule 9013–1(L).

## II.

■ To vacate an arbitrator's decision on a Dalkon Shield claim, the Court must find one of the four grounds identified in First Amended Arbitration Rule 44(a):

1. The decision was procured by corruption, fraud or undue means.

2. The arbitrator was biased or corrupt.

3. The arbitrator was guilty of abuse of discretion in refusing to postpone the hearing, refusing to admit competent and relevant evidence, or engaging in misconduct that prejudiced the moving party.

4. The arbitrator exceeded his or her powers, or so exercised them such that he or she failed to make a final, definite, and unambiguous decision.

This Court has stressed many times that a Dalkon Shield arbitrator's decision receives substantial deference on review. *See, e.g., In re A.H. Robins Co. (Dalkon Shield Claim-*

---

1. The PAC is a nonprofit organization at Duke University that serves as the Neutral Third Party in Dalkon Shield arbitrations.

*ants Trust v. Crombie)*, 221 B.R. 169 (E.D.Va.1998), Mem. Op. at 8–10; *In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Fields)*, 219 B.R. 135, 143 (E.D.Va.1998); *In re A.H. Robins Co. (Schwalm v. Dalkon Shield Claimants Trust)*, 217 B.R. 763, 765 (E.D.Va.1998); *In re A.H. Robins Co. (Short v. Dalkon Shield Claimants Trust)*, 219 B.R. 111, 114 (E.D.Va.1998); *In re A.H. Robins Co. (Widmark v. Dalkon Shield Claimants Trust)*, 219 B.R. 105, 107 (E.D.Va.1998); *In re A.H. Robins Co. (Campbell v. Dalkon Shield Claimants Trust)*, 219 B.R. 108, 110 (E.D.Va.1998). An overly expansive review of arbitration decisions would undermine the efficiencies arbitration seeks to achieve. *See Germany*, 197 B.R. at 528 n. 2. Accordingly:

> An arbitrator's decision receives substantial deference on review, and may only be vacated for the grounds stated in the Arbitration Rules, § 10 of the Federal Arbitration Act, or where the arbitrator acted in manifest disregard of the law. This Court will not overturn an arbitration decision merely because the Court would have reached a different conclusion if presented with the same facts. Instead, the Court's role is limited to determining whether the arbitration process was itself flawed.

*Fields*, 219 B.R. at 144 (quoting *Short*, 219 B.R. at 114).

### A. *Ms. Maksimuk Has Not Suggested any Arbitrator Bias that Could Lead to Vacating a Decision*

Ms. Maksimuk argues that Arbitrator Kell "is a specialist in product liability defense." Maksimuk Br. at 3–4. She describes the arbitration panel of five names provided by the PAC as "stacked with defense specialists," because three of them were at some time affiliated with the Clark Hill law firm in Detroit, Michigan, and only one of the five had been in a reported appellate decision as counsel to a plaintiff. *See id.* at 5. To her, the composition of the panel "arouses the suspicion of bias." *Id.* She sees an arbitrator as biased and corrupt if in his products liability practice he has represented more defendants than plaintiffs, and feels that a "nondefense oriented arbitrator" would have been more likely to rule in her favor. *See id.*

▆▆ The Court disagrees. An arbitrator's representation of defendants in his litigation practice, or of more defendants than plaintiffs, is not the kind of bias necessary to overturn his decision as an arbitrator, any more than would his representation of more plaintiffs than defendants. To secure reversal of an arbitrator's award for bias, the movant must show a "condition of the mind which sways judgment and renders a judge unable to exercise his functions impartially in a particular case." *Germany*, 197 B.R. at 528. The movant has the " 'significant burden' " of showing " 'specific facts that indicate improper motives on the part of an arbitrator.' " *Id.* (quoting *Remmey v. Paine-Webber, Inc.*, 32 F.3d 143, 148 (4th Cir.1994)). The arbitrator's partiality must be "direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Id.*

In *Short*, the claimant argued that her arbitrator was biased because his "law practice consists of primarily representing defendants in products liability cases." 219 B.R. at 114. The Court found that such an allegation was "at most remote, uncertain, or speculative" and did not amount to the kind of bias required under *Germany* to vacate an arbitrator's decision. *See id.* Ms. Maksimuk makes the same speculative argument rejected in *Short*. Because Arbitrator Kell ruled against her, she surmises that his defense practice must have left him "predisposed to the defense with respect to the resolution of close issues of injury existence and causation." Maksimuk Br. at 6.

▆▆ Such conjecture does not warrant upsetting an arbitrator's decision. Arbitrator bias against a party cannot be deduced from the mere fact that he did not decide in that party's favor. In *Fields*, this Court rejected a claimant's contention that her arbitrator was biased because he disagreed with her. The Court will not "allow any claimant who disagrees with an arbitrator's decision to obtain a new hearing solely because the arbitrator reached a conclusion different from the one the claimant wanted." 219 B.R. at 144. The same is true upon judicial review of decisions by Alternative Dispute Resolution ("ADR") referees. *See In re A.H. Rob-*

ins Co. (Higgins v. Dalkon Shield Claimants Trust), 215 B.R. 110, 112 (E.D.Va.1997); In re A.H. Robins Co. (Lammert v. Dalkon Shield Claimants Trust), 216 B.R. 539 (E.D.Va.1997).

### B. Ms. Maksimuk Waived Any Objection to Arbitrator Kell Serving as the Arbitrator

■ The nature of Arbitrator Kell's practice thus does not constitute the bias necessary under First Amended Arbitration Rule 44(a) to overturn his decision. Further, Ms. Maksimuk waived this argument during her case and cannot rely upon it now.

Ms. Maksimuk argues that Arbitrator Kell should have disclosed his defense practice before her arbitration hearing in November 1997. See Maksimuk Br. at 7. She says that she "would have more strenuously resisted the appointment of Arbitrator Kell had there been a specific disclosure that he was a products liability defense specialist." Id. She asserts that she learned of it only "[d]uring the preparation of this motion." Id. at 3. The Court does not find these assertions credible.

Following First Amended Arbitration Rule 3(b)(1), on November 11, 1996, the PAC sent the Trust and Mr. Zalecki a list of eleven potential arbitrators for Ms. Maksimuk's case. According to First Amended Arbitration Rule 3(b)(2), if the parties cannot agree upon an arbitrator from that list, the PAC sends out a strike list of five potential arbitrators from the first list. The Trust and the plaintiff each strike two from that list of five and rank their preferences for the other three. Under First Amended Arbitration Rule 3(b)(3), the PAC then appoints an arbitrator from among the persons neither party has stricken, using the person with the highest common ranking.

Ms. Maksimuk and the Trust were unable to agree to an arbitrator. On December 23, 1996, the Trust's counsel notified the PAC to that effect. On January 2, 1997, the PAC sent the parties a list of five potential arbitrators. Mr. Zalecki wrote to the PAC on January 17, 1997, asking for a new strike list from which to choose the arbitrator for Ms. Maksimuk's case because "the list of arbitrators was made up primarily of attorneys specializing in the defense [of] medical malpractice and product liability claims." He stated then that his "investigation indicates that all the proposed arbitrators are from firms specializing in the defense of medical malpractice or product liability claims." On January 23, 1997, the Trust sent its strike list to the PAC, listing Mr. Kell as its third choice. On March 13, 1997, the PAC notified the parties that Mr. Kell had been appointed as the arbitrator for the case. The PAC cannot appoint someone either party has struck from the list. Its appointment of Mr. Kell necessarily means that Ms. Maksimuk did not strike him as a potential arbitrator.

In its Response to the Second Motion To Vacate, the Trust reported that during the prehearing conference call with Arbitrator Kell on March 26, 1997, Mr. Zalecki asked him about his defense practice. The 1996 and 1997 version of the Martindale–Hubbell listing for Arbitrator Kell's law firm revealed the defense nature of the firm's practice. The Clark Hill firm's website from November 1996 and March 1997 referred to the firm's defense practice. Ms. Maksimuk and her lawyer thus knew, and could have known more had they pursued it, about Arbitrator Kell's defense practice, as well as that of the other members of the panel, before her November 1997 arbitration hearing. Yet she did not seek Mr. Kell's recusal.

The procedure for objecting to an arbitrator is set out in First Amended Arbitration Rule 5. Any party may ask the arbitrator to recuse himself. If he refuses, the party may move the PAC to remove him. Ms. Maksimuk did not invoke this procedure. Mr. Zalecki wrote to the PAC complaining about the overall composition of the panel, but the First Amended Arbitration Rules do not provide for any such procedure and the PAC properly did not act upon his letter. Ms. Maksimuk did not move for recusal and did not strike Mr. Kell as a potential arbitrator. After Arbitrator Kell had denied the claim on statue of limitations grounds, Ms. Maksimuk agreed to send the case back to him for a ruling on the merits.

First Amended Arbitration Rule 47 specifies that a party who proceeds with an arbi-

tration after knowing of some breach of the Rules waives any objection on the matter. A claimant's failure to invoke the recusal remedy of First Amended Arbitration Rule 5 to question an arbitrator's impartiality precludes her from seeking a new arbitration hearing after the arbitrator has heard and ruled on merits of her case. *See Short*, 219 B.R. at 114. Ms. Maksimuk waived any potential objection to Arbitrator Kell's qualifications or impartiality by failing to seek his recusal or removal under First Amended Arbitration Rule 5. She therefore cannot be awarded relief on this ground now.

### C. There is No Basis for Any Discovery of the PAC

█ Ms. Maksimuk asks for 120 days to conduct discovery of the PAC to determine if it "intentionally or unintentionally caused [her] to have a defense specialist as an arbitrator." Maksimuk Br. at 6. There is no provision for discovery of the PAC in the First Amended Arbitration Rules. The remedy available to a party unsatisfied with the outcome of an arbitration is limited to First Amended Arbitration Rule 44.

Further, because an arbitrator's defense background is not grounds to vacate his decision and Ms. Maksimuk has waived any such objection, discovery of the PAC on the issue would serve no purpose. At a time when the Trust is nearing the completion of its assigned tasks under the Plan, the Court will not tolerate the waste of time and claimants' funds such an expedition would entail. Arbitration would hardly be the efficient, expeditious means to adjudicate a Dalkon Shield claim required by CRF § A if a claimant who is unhappy with an arbitrator's decision could then spend four months embroiling the PAC and the Trust in discovery proceedings, and then longer in an evidentiary hearing on whatever is discovered in those proceedings. Arbitration is supposed to be final and binding, with the only exceptions being those specified in First Amended Rule 44. The Court will not allow it to spawn collateral litigation and thus will not allow Ms. Maksimuk to conduct discovery of the PAC.

### D. The Court Will Not Second–Guess an Arbitrator's Evidentiary Ruling

Before the November 1997 evidentiary hearing, Mr. Zalecki indicated that he intended to offer as an exhibit at that hearing his handwritten notes of his telephone conversation on August 1, 1983, with Dr. Donald Sweeney, who had performed surgery on Ms. Maksimuk in January 1983. The Trust filed a Motion In Limine to exclude those notes from the hearing as hearsay. In her Response to that motion, Ms. Maksimuk acknowledged that the notes were hearsay, but asked Arbitrator Kell to admit them under the residual hearsay exception of Fed. R.Evid. 803(24) and 804(5), which now appears in Fed.R.Evid. 807.

Arbitrator Kell preliminarily ruled on November 4, 1997, that the notes would not be admitted as evidence. During the hearing, he followed that ruling and excluded them from the case. On November 13, 1997, Ms. Maksimuk filed a Motion To Reconsider with Arbitrator Kell, asking him to reverse himself on the admissibility of the notes, again arguing that the notes should be admissible hearsay under Rules 803(24) and 804(5). In his December 8, 1997 decision, Arbitrator Kell repeated his ruling that the notes were not admissible.

█ Ms. Maksimuk now asks the Court to reverse an evidentiary ruling made three times by Arbitrator Kell. This the Court is extremely reluctant to do. In *In re A.H. Robins Company, Incorporated (Briggs v. Dalkon Shield Claimants Trust)*, 211 B.R. 199 (E.D.Va.1997), where the claimant contended that the arbitrator had erred in refusing to admit various pieces of evidence, the Court ruled that the arbitrator "was the judge of the admissibility of all evidence submitted during the hearing." 211 B.R. at 203. There can be no judicial review of those rulings unless the claimant shows both that: (1) the arbitrator's evidentiary ruling was erroneous; and (2) the error deprived the claimant of a "fundamentally fair hearing." *Id.*

█ Arbitrator Kell ruled that Mr. Zalecki's notes were not sufficiently trustworthy to be received into evidence under the

residual hearsay exception. Dr. Sweeney had noted in his report of Ms. Maksimuk's January 1983 surgery that Ms. Maksimuk still had both her fallopian tubes at that time. In fact, one of her tubes had been removed by another doctor years before. The conversation between Dr. Sweeney and Mr. Zalecki occurred eight months after Dr. Sweeney had performed his surgery. That the notes were made by a party's lawyer detracted from their trustworthiness. Arbitrator Kell certainly did not abuse his discretion in concluding that the notes were not sufficiently reliable to overcome the hearsay objection.

Indeed, Ms. Maksimuk does not contend here that Arbitrator Kell erred in his ruling on the residual hearsay exception. She no longer calls the notes hearsay, but instead argues that they were not offered to prove the truth of what is asserted in the notes and should have been admitted as evidence under First Amended Arbitration Rule 32(c), which will allow use of certain types of statements made by a witness under oath. *See* Maksimuk Br. at 10. In the Motion To Reconsider she filed with Arbitrator Kell, however, she had stated that the notes were not offered under First Amended Arbitration Rule 32(c), but instead under Rules 803(24) and 804(5) of the Rules of Evidence as trustworthy hearsay.

■ An arbitration claimant cannot raise for the first time on a Motion To Vacate arguments she did not give the arbitrator an opportunity to consider, where the grounds for the argument were available to her during the arbitration case. Nor can a party seek judicial reversal on the strength of an argument which is the direct opposite of that argued to the arbitrator. Ms. Maksimuk waived this non-hearsay argument by never raising it in the arbitration. She waived the First Amended Arbitration Rule 32(c) argument by stating in an arbitration pleading that she was not relying upon it in the arbitration.

The Court also notes that, even if it could consider these arguments now, Ms. Maksimuk is wrong on her nonhearsay and First Amended Arbitration Rule 32 arguments. The notes must have been offered to prove the truth of what was asserted in them—that Dr. Sweeney thought he saw evidence of PID in Ms. Maksimuk in 1983—or they had no relevance and thus no evidentiary value. The notes contained two levels of hearsay. First, they were Mr. Zalecki's out-of-court declaration. Second, they purported to recount what Dr. Sweeney said. The notes were offered to prove the truth of Mr. Zalecki's declaration, in that they were offered to prove that they correctly recorded what Dr. Sweeney had said on the telephone in 1983. There is no hearsay exception for this hearsay.

The notes were also offered to prove the truth of what Dr. Sweeney supposedly said on the telephone in 1983. In a postoperative medical record, Dr. Sweeney had recorded his view that Ms. Maksimuk had PID in 1983. Arbitrator Kell concluded that Dr. Sweeney had incorrectly diagnosed PID. The pathologists who tested the tissue removed from Ms. Maksimuk by Dr. Sweeney had found no evidence of infection. Mr. Zalecki sought to use his notes to show that Dr. Sweeney thought he saw evidence of PID. They served no purpose if they were not offered to prove the truth of that assertion. Ms. Maksimuk's approach to hearsay would make all subsequent consistent statements by a witness nonhearsay, regardless of whether there is any charge of recent fabrication, on the theory that they were offered not to prove the truth of what was asserted in the statements, but to prove the truth of the same statement made by the witness at an earlier time. The law does not recognize such a theory.

The Court also disagrees with Ms. Maksimuk's current view of First Amended Arbitration Rule 32(c). The Rule allows an arbitrator to admit written statements sworn to under penalty of perjury by the witness making the statement. Mr. Zalecki's notes were not signed or sworn to by the witness, Dr. Sweeney. The arbitrator's ruling on this point will therefore not be disturbed.

E. *This Court Does Not Review the Sufficiency of the Evidence at an Arbitration*

■ Ms. Maksimuk asks the Court to reverse Arbitrator Kell's conclusion that she

had not shown by the preponderance of the evidence that she had uncontrolled bleeding and stomach pains while using the Dalkon Shield IUD. This is not a ground for judicial review of an arbitration decision. In *Germany*, the Court rejected an arbitration claimant's argument that the arbitrator had wrongly concluded that the claimant had a sexually transmitted disease, noting:

> Movant's discontent with the result of the arbitration proceedings simply is not the appropriate focus of this Court; indeed, it is well settled that she cannot be afforded a "second bite at the apple" merely because she hopes for a more favorable outcome.

197 B.R. at 530 (quoting *Remmey*, 32 F.3d at 147). The Court also held:

> In general ... disagreement with an arbitrator's factual findings does not constitute adequate grounds for vacating his decision as a court is limited to determining "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it."

*Id.* at 529 (quoting *Remmey*, 32 F.3d at 146). The Court held in *In re A.H. Robins Company, Inc.; (O'Connor v. Dalkon Shield Claimants Trust)*, 158 B.R. 640 (E.D.Va.1993) that "[w]hether the evidence offered is sufficient to carry the proponent's burden of proof is for the finder of fact." 158 B.R. at 643. *See also, Short*, 219 B.R. at 114–15 (claim of factual error by the arbitrator is an inappropriate ground for judicial review); *Widmark*, 219 B.R. at 108 (Court declined to "revisit and essentially conduct another hearing" on the claim). Ms. Maksimuk cannot have this Court review the evidence on the excessive bleeding claim and decide it differently.[2]

### III.

Ms. Maksimuk has not shown any of the grounds necessary under Arbitration Rule 44

to vacate an arbitrator's decision. Accordingly, the Court will DENY her motion.

---

2. A previous ruling by an ADR referee awarding Mr. Maksimuk $1,000 for his wife's excessive bleeding had no effect on Ms. Maksimuk's later arbitration. In ADR, the Trust was not represented by lawyers and did not assert all the defenses that would be available in an arbitration. First Amended Arbitration Rule 32(f)(3) made the results of ADR cases inadmissible in arbitration. An ADR referee's decision on one spouse's claim is not admissible in a later ADR hearing on the other spouse's claim. *See In re A.H Robins Co. (Vela v. Dalkon Shield Claimants Trust)*, 210 B.R. 523 (E.D.Va.1997). Nor is it admissible in a later arbitration.